In re N.E.W. NEW ENTERTAINMENT WORLD, Debtor.

Stephen B. DARR, Trustee, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of New England Allbank, Defendant.

Bankruptcy No. 88–780.
ADV No. 91–1088.

United States Bankruptcy Court,
D. New Hampshire.

July 14, 1993.

---

Jennifer Rood, Backus, Meyer & Solomon, Manchester, NH, for FDIC, defendant.

Dennis Bezanson, Manchester, NH, for Steven Darr, plaintiff.

1. See discussion at pages 630–31 *infra.*

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

### I. INTRODUCTION

Before the Court for decision is the trustee's amended complaint for recovery of approximately $400,000 which was allegedly preferentially transferred to the failed New England Allbank ("Allbank"). The Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for Allbank and has moved to dismiss the complaint with prejudice pursuant to 12 U.S.C. § 1821(d)(13)(D) on the theory that that subsection defeats this Court's subject matter jurisdiction. The trustee has continued the repartee by raising due process, conflict of laws, and retroactivity arguments. While colorable, these arguments, with the exception of the issue of retroactivity [1], are not reached as the Court concludes that it does not have subject matter jurisdiction over this adversary proceeding. Accordingly, for the reasons discussed below, the FDIC motion to dismiss will be granted by order entered separately. The following constitute the court's findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 7052.

### II. FACTS

1. On December 12, 1988, a chapter 11 involuntary petition was filed against N.E.W.—New Entertainment World, Inc. (hereinafter "NEW").

2. On May 16, 1989 the chapter 11 case was converted to a proceeding under Code chapter 7.

3. On June 6, 1989, the plaintiff was appointed the interim chapter 7 trustee of debtor's estate.

4. On August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (hereinafter "FIRREA"), 12 U.S.C.S. § 1811 *et seq.*, became effective law.

5. On September 8, 1989, the plaintiff became the permanent chapter 7 trustee of the debtor pursuant to Code section 702.

6. On December 12, 1990, the Commissioner of Banking for the Commonwealth of Massachusetts appointed the FDIC as the receiver of Allbank.

7. Pursuant to the requirements of FIRREA, the FDIC gave publication notice of Allbank's insolvency, its appointment as receiver for Allbank, and a March 17, 1991 bar date for the filing of proof of claims against the receivership estate.[2]

8. Pursuant to the requirements of FIRREA, the FDIC also sent actual written notice to all creditors who appeared on the books and records of Allbank on the date that the FDIC was appointed receiver.

9. On June 11, 1991 the trustee filed its complaint against the FDIC as receiver of Allbank. The complaint was amended on or about August 5, 1991.

## III. ARGUMENT OF THE PARTIES

The trustee's amended complaint alleges that at some unspecified time within the ninety day period immediately prior to the petition date, the debtor sold substantially all of its assets generating approximately $400,000 which it then transferred to Allbank in satisfaction of two promissory notes. The amended complaint also alleges that Allbank did not have a perfected security interest in the debtor's equipment, inventory, accounts receivable, and general intangibles. Specifically, the trustee claims that while Allbank filed a UCC–1 Financing Statement with the New Hampshire Secretary of State's office, it never filed the same with the Manchester City Clerk's office. *See* N.H.Rev.Stat.Ann. 382–A:9–401(1)(d). Put together, the trustee contends that the $400,000 payment allowed Allbank to receiver more than it would have in a liquidation and was thus preferential. Asserting his status as a lien creditor as of the petition date, 11 U.S.C. § 544(a)(1), the trustee claims a priority right to the $400,000 and seeks a turnover order pursuant to 11 U.S.C. § 550.

In response, the FDIC has moved to dismiss the trustee's amended complaint for lack of subject matter jurisdiction. The FDIC relies on the FIRREA statute, specifically the combination of subsections 1821(d)(3), (5), and (13), which together establish an administrative procedure for the determination of claims against the receivership estate (hereinafter "administrative claims procedure"). The FDIC points to the undisputed fact that the chapter 7 trustee has never filed a proof of claim with the FDIC as required by FIRREA's administrative claims procedure. The FDIC further notes that it has already begun making distributions and paid a first dividend to creditors in February, 1991.

The trustee has replied that this Court has jurisdiction via 28 U.S.C. § 1334(b) and notes that under 28 U.S.C. § 157(b)(2)(F), a preference action is a core proceeding under the Bankruptcy Code. The trustee claims he was entitled to actual written notice pursuant to 12 U.S.C. § 1821(d)(3)(B) and (C) and states that he never received actual written notice of the March 17, 1991 "bar date" for filing claims against the Allbank receivership estate. The trustee also argues that the preference cause of action accrued prior to enactment of FIRREA's administrative claims procedure such that its application to this proceeding would be an impermissible retroactive application of law. Lastly, according to the trustee, the combination of no actual individual written notice and retroactive application of the FIRREA statute amounts to a deprivation of constitutional due process of law.

The Court conducted a hearing on August 7, 1991 on the defendant's motion to dismiss and directed further briefing. The Court conducted a further hearing on February 28, 1992 at which time the parties advised the Court that a series of recent decisions would likely impact determination of this proceeding. Based on these representations, the Court concluded that further oral argument was warranted and

---

**2.** According to the FDIC, the publication notice was printed once per month for three months in a number of local and regional newspapers. The newspapers in which notice was published include the *Lowell Sun, The Gardner News, The Worcester Telegram and Gazette,* and the *Fitchburg Sentinel And Enterprise.*

held another hearing on April 7, 1992. At that hearing the trustee strenuously argued against the alleged retroactive application of FIRREA to this proceeding. At the conclusion of the hearing the Court gave the parties another thirty days to brief the retroactivity issue. The FDIC filed its memorandum of law on April 30, 1992 and the trustee replied on May 28, 1992, at which time the Court considered the motion ripe for adjudication.

## IV. APPLICABLE LAW

28 U.S.C. § 1334. *Bankruptcy cases and proceedings.*

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 157. *Procedures.*

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(F) proceedings to determine, avoid, or recovery preferences.

12 U.S.C. § 1821. *Permanent Insurance Fund.*

(3) Authority of receiver to determine claims. (A) In general. The Corporation may, as receiver, determine claims in accordance with the requirements of this subsection and regulations prescribed under paragraph (4)(A).

(B) Notice requirements. The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution shall—

(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and

(ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

(C) Mailing required. The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books—

(i) at the creditor's last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

\* \* \* \* · \* \*

(5) Procedures for determination of claims. (A) Determination period. (i) In general. Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

(ii) Extension of time. The period described in clause (i) may be extended by a written agreement between the claimant and the Corporation.

(iii) Mailing of notice sufficient. The requirements of· clause (i) shall be deemed to be satisfied if the notice of any determination with respect to any claim is mailed to the last address of the claimant which appears—

(I) on the depository institution's books;

(II) in the claim filed by the claimant; or

(III) in documents submitted in proof of the claim.

(iv) Contents of notice of disallowance. If any claim filed under clause (i) is

disallowed, the notice to the claimant shall contain—

(I) a statement of each reason for the disallowance; and

(II) the procedures available for obtaining agency review of the determination to disallow the claim or judicial determination of the claim.

\*　　\*　　\*　　\*　　\*　　\*

(F) Legal effect of filing. (i) Statute of limitation tolled. For purposes of any applicable statute of limitations, the filing of a claim with the receiver shall constitute a commencement of an action.

(ii) No prejudice to other actions. Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.

\*　　\*　　\*　　\*　　\*　　\*

(13)(D) Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

11 U.S.C. § 547. *Preferences.*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 550. *Liability of transferee of avoided transfer.*

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

## V. DISCUSSION

### Jurisdiction of the Bankruptcy Court

By separate memorandum of decision entered this date in the cases *Steven Tamposi v. FDIC*, ADV No. 92–1055, and *Elizabeth Tamposi v. FDIC*, ADV No. 92–1056, I have held that 12 U.S.C. § 1821(d)(13)(D) does not trump this Court's subject matter jurisdiction over an adversary proceeding involving property in the actual or constructive possession of the bankruptcy estate. The *Tamposi* decision harmonized the Bankruptcy Code and FIRREA in a way that preserved the underlying purpose of each without rendering the key substantive provisions of either meaningless or nullities. *See, e.g., California Human Resources Dep't v. Java*, 402 U.S. 121, 130, 91

S.Ct. 1347, 1353, 28 L.Ed.2d 666 (1971) ("The purpose of the federal statutory scheme must be examined in order to reconcile the apparent conflict between the provision of the California statute and § 303(a)(1) of the Social Security Act.").

■ The underlying rationale for the *Tamposi* result was a focus on the location of the res on which a particular adversary proceeding is predicated.[3] If the subject res, money or property, is in the actual or constructive possession of the bankruptcy estate, then Code provisions become paramount and FIRREA is not implicated in a way that would bar suit. But the contrapositive of *Tamposi*, which is called into play in the present adversary proceeding, is that where the res is in the actual or constructive possession of. the receivership estate, then FIRREA's administrative claims procedure requirements are paramount and must be complied with in order to preserve one's rights against the receivership estate.

This basic distinction was observed by Judge Conrad in his well-reasoned and persuasive tandem decisions of *In re All Season's Kitchen, Inc.*, 145 B.R. 391 (Bankr. D.Vt.1992) and *In re Purcell*, 141 B.R. 480 (Bankr.D.Vt.1992). *Purcell* and *All Season's Kitchen*, both denied the FDIC's motions to dismiss pursuant to subsection 1821(d)(13)(D), holding that a debtor's action to determine the validity, priority, and extent of a lien falls outside the FIRREA administrative claims procedure. *Purcell*, 141 B.R. at 485; *All Season's Kitchen*, 145 B.R. at 400. The explicit rationale for the *Purcell—All Season's Kitchen* holding is that a debtor is not bound by the FIRREA administrative claims procedure when it is the FDIC making a claim against assets of the bankruptcy estate.

This case represents the opposite in that the debtor is attempting to lay claim to assets of the receivership estate. As I explained in *Tamposi*, the dividing line is defined by where the asset that will actually be liquidated is located. In *Purcell, All*

*Season's Kitchen*, and *Tamposi*, the disputed assets were in the actual or constructive possession of the bankruptcy estate. Here, the disputed $400,000 was paid over to Allbank prior to its demise back sometime between September and November of 1988.

■ In this case it is uncontroverted that the trustee never filed a claim with the receivership estate. This was so despite the fact that he had at the least inquiry notice of the appointment of the FDIC as the receiver for Allbank. Applying the rule of *Tamposi* to the present case, the conclusion is ineluctable: since the res is and has been prior to the inception of this case in the actual possession of the bank or the subsequent receivership estate, the FIRREA administrative claim provisions apply and 12 U.S.C. § 1821(d)(13)(D) precludes subject matter jurisdiction in this Court.

■ The trustee did raise a retroactivity issue during this proceeding arguing that the 12 U.S.C. § 1821(d)(13)(D) statute should not be applied retroactively and therefore does not support a preclusion of subject matter jurisdiction in the present case. The FIRREA statute became effective August 9, 1989. While the original chapter 11 petition was filed in December of 1988, the chapter 7 trustee, the plaintiff here, was not appointed preliminarily until June 9, 1989, and permanently on September 8, 1989. Under § 546(a)(1) of the Bankruptcy Code a two-year statute of limitations commenced to run on preference actions upon the appointment of the trustee—*not* at the time of the original 1988 transfer being attacked. Since § 546(a)(1) runs the statute of limitations from the date of the trustee's *permanent* appointment, by reference to § 702 of the Code, the FIRREA provisions were already effective prior to that date and in no sense have to be applied retroactively on the facts of the present case. Indeed, the FDIC was not even appointed receiver of Allbank un-

---

**3.** The res must be a tangible asset and not a mere inchoate chose in action. In *Tamposi* the res was both real and personal property to which the attachments had fixed. In the pres-

ent case, the real asset that underlies the trustee's amended complaint is the approximate $400,000 dollars representing the proceeds of the pre-petition sale of debtor's assets.

til December 12, 1990, which triggered the administrative claim procedures under FIR-REA resulting in the March 17, 1991 bar date, which this Court has concluded over-rides the Bankruptcy Code provisions but in a timeframe in which the trustee *could* have complied without losing any rights. No matter how the question is viewed therefore no true retroactivity issue is presented on these facts. Even if a retroactivity issue were presented there is no showing of manifest injustice to the trustee since the effect of applying the FIRREA statute was merely to shorten the time for action when it was still within the power of the trustee to initiate appropriate action to recover the preference from the receivership assets.

As I have today decided that the Court lacks subject matter jurisdiction over the trustee's amended complaint to recover the alleged preferential transfer, it becomes unnecessary to address his alternative notice and due process arguments. Those issues are appropriately raised in the FDIC administrative process and in any appellate process specified for judicial review of FDIC determinations.

## VI.  CONCLUSION

For all the foregoing reasons, where the facts are as present in this case, the Court harmonizes the Code and FIRREA as follows: where the primary tangible or intangible asset is in the actual or constructive possession of the bankruptcy estate, then the Code overrides FIRREA and bankruptcy law controls; obversely, where the contested asset is in the actual or constructive possession of the receivership estate, then the provisions of FIRREA overrides the Code and must be complied with. Here that means that the FDIC's motion to dismiss will be granted. A separate order to that effect will be entered contemporaneously with the filing of the decision.